# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RANDY BROOKS,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:07-cv-185
(Barrett, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum. (Doc. 10).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1959 and was 46 years old at the time of the ALJ's decision. Plaintiff has a high school education and one year of college. His past work experience was as a hospice home care worker, orthopedic technician, transportation attendant, and data entry worker. Plaintiff filed applications for SSI and DIB in November and December 2002 respectively, alleging an onset of disability of September 25, 2002, due to migraine headaches,

chronic fatigue syndrome, fibromyalgia, arthritis in the hands, left knee, and hip, and depression. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo hearing before an administrative law judge (ALJ). Plaintiff, who was represented by counsel, appeared at two hearings before ALJ Daniel Shell. At the second hearing, a Vocational Expert (VE) and medical expert (ME), appeared and testified.

On May 25, 2006, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from severe post-traumatic headaches, probable fibromyalgia, occasional dipoplia, and a depressive disorder, but that such impairments do not alone or in combination meet or equal the Listing of Impairments. (Tr. 28). According to the ALJ, plaintiff retains the residual functional capacity (RFC) for a range of sedentary work, except that he cannot balance, drive during the course of employment, or work in the area of heavy industrial machinery. In addition, he is limited to tasks requiring monocular vision, can occasionally climb, and is limited to onc- and two-step job duties that are considered low stress, meaning jobs not involving production quotas, dealing with the public, or over the shoulder supervision and which allow the person to work independently of others. (Tr. 28). The ALJ determined that plaintiff's allegations of total disability are not credible. (Tr. 28). The ALJ determined that plaintiff could not perform his past relevant work, but based on the vocational expert's testimony, could perform other jobs that exist in significant numbers in the national economy such as nut sorter, addresser, and table worker. (Tr. 29). Consequently, the ALJ concluded that plaintiff is not disabled under the Act, and therefore not entitled to disability benefits. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).

The Court's sole function is to determine whether the record as a whole contains substantial

evidence to support the Commissioner's decision. The Commissioner's findings stand if they are

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are

supported by substantial evidence, the Court must consider the record as a whole. *Hephner v.*

*Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status

requirements, be under age 65, file an application for such benefits, and be under a disability as

defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is

contingent upon two findings. First, plaintiff must suffer from a medically determinable physical

or mental impairment that can be expected to result in death or that has lasted or can be expected

to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the

impairments must render plaintiff unable to engage in the work previously performed or in any

other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible

individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is

dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

establish disability, plaintiff must demonstrate a medically determinable physical or mental

3

impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.

4

*Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially

5

greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about

6

medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v.*

*Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so

8

that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 6 at 2-5; Doc. 9 at 6-11) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns four errors in this case. First, plaintiff contends the ALJ erred in not accepting the RFC opinion of plaintiff's treating physicians. Second, plaintiff argues the ALJ erred in failing to include plaintiff's chronic depression in his hypothetical question to the vocational expert. Third, plaintiff argues the ALJ erred by not "addressing the debilitating migraines nor the fluorescent lighting issue, nor the depression." (Doc. 6 at 11). Fourth, plaintiff argues the ALJ erred in finding plaintiff not credible. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

## I. Weight to treating physician

Plaintiff contends the ALJ failed to give appropriate weight to the RFC opinion of Dr. Frecka, plaintiff's treating internist, who opined in February and June 2005 that plaintiff was limited to less than sedentary work and disabled. (Tr. 487, 493-496). Plaintiff argues that "[b]y ignoring both of Dr. Frecka's RFC opinions and adopting those of a non-examining physician, Judge Shell improperly devised his own RFC." (Doc. 6 at 10).

Contrary to plaintiff's contention, the ALJ did not ignore Dr. Frecka's RFC opinions, but

9

explicitly rejected the opinions because they were inconsistent with a previous RFC assessment issued by Dr. Frecka and with the objective and clinical evidence of record. (Tr. 23-24). On May 13, 2005, Dr. Frecka gave plaintiff an RFC for a reduced range of medium work, opining that plaintiff could lift up to 25 pounds occasionally and 15 pounds frequently, could sit for eight hours per day, for one hour without interruption, and could stand and walk without limitation. (Tr. 483-486). On June 6, 2005, some three weeks later, Dr. Frecka opined that plaintiff was limited to less than sedentary work. Dr. Frecka stated that plaintiff could lift only five pounds, stand and walk for only two hours out of an eight hour day, and sit for four hours out of an eight hour day. (Tr. 493-496). Dr. Frecka submitted a functional assessment from September 2005 which again limited plaintiff to standing/walking for two hours, for twenty minutes at one time, to sitting for no more than four hours, for only one hour at one time, and to lifting six to ten pounds both occasionally and frequently. (Tr. 528). As the ALJ noted, Dr. Frecka failed to explain the discrepancies in his May 2005 and June 2005 RFC assessments, and his treatment records contain no change in the nature or characteristic of plaintiff's impairments to explain the drastic change in his opinion of plaintiff's abilities. (Tr. 24). Under these circumstances, the ALJ did not err in rejecting the more limiting RFC opinions provided by Dr. Frecka. *See Stanley v. Sec. of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (ALJ properly rejected treating physician's later opinion that plaintiff could not work since treating physician did not provide any objective medical findings to support his change of opinion).

To the extent plaintiff argues that the May 2005 RFC opinion from Dr. Frecka "was not complete" because it "did not address the migraines" or "diplopia," and that the June 2005 opinion "considered all his medical impairments in the updated RFC" (Doc. 10 at 4) and should

10

therefore have been credited by the ALJ, plaintiff's argument is without merit. A review of the May 2005 RFC assessment indicates that Dr. Frecka in fact noted "headaches" (Tr. 483) and "diplopia." (Tr. 486). There is no evidence to support plaintiff's contention that the June 2005 RFC assessment considered impairments not previously considered by Dr. Frecka.

In addition, the ALJ properly considered the medical specialties of the physicians of record in determining the weight to accord their opinions. In determining plaintiff's RFC, the ALJ gave significant weight to the functional capacity assessments of Dr. Schmerler, the consultative physician, and Dr. Geisel, the medical expert who testified at the hearing. The ALJ noted that Dr. Schmerler is a board certified neurologist and Dr. Geisel is board certified in both internal medicine and rheumatology, while Dr. Frecka, an internist, is not board certified. (Tr. 24). The ALJ properly gave more weight to the opinions of the physicians whose specialties coincided with plaintiff's alleged impairments. *See* 20 C.F.R. § 404.1527(d)(5).

The ALJ also determined that Dr. Frecka's more extreme RFC assessments were inconsistent with the substantial evidence of record. Plaintiff has made no attempt to explain how Dr. Frecka's assessments are supported by his own medical findings or the other evidence of record, and it appears that Dr. Frecka relied on plaintiff's subjective statements about his own limitations. When asked for the medical findings which support his RFC assessments, Dr. Frecka referred to plaintiff's diagnoses (Tr. 493) and subjective complaints. (Tr. 494, 528). "[S]ubjective complaints do not constitute objective medical findings." *Walton v. Commissioner of Social Security,* 60 Fed. Appx. 603, 610 (6th Cir. 2003) (citing *Young v. Sec. of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir.1990)); *see* 20 C.F.R. § 404.1528. In contrast to plaintiff's argument, medical opinions, even those from treating physicians, are not entitled to

11

controlling weight when they are based almost exclusively upon a patient's self-reported symptoms, particularly when there is evidence in the record suggesting that those symptom reports are exaggerated. *See generally* 20 C.F.R. § 404.1528 (distinguishing between "symptoms," "signs," and "laboratory findings," and providing that "symptoms are your own description of your physical and mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment."). Because weight to a treating physician depends, in part, on the supportability of the opinion by the clinical and objective medical findings, 20 C.F.R. § 1527(d)(2); *Wilson*, 378 F.3d at 544, the ALJ reasonably considered this factor in declining to give controlling weight to Dr. Frecka's later RFC opinions.

Contrary to plaintiff's assertion that the ALJ adopted the RFC opinion of a non-examining physician (Doc. 6 at 10), the ALJ's opinion clearly shows that while the ALJ did rely on Dr. Geisel's opinion, he also placed considerable weight on the neurological examination by Dr. Schmerler with due regard to the clinical and other medical findings of record:

> The physical capacity set forth above is based largely on the testimony of Dr. Geisel and the evaluation report of Dr. Schmerler. The claimant has a headache disorder, but physical examinations have consistently revealed no focal neurological deficits or other objective evidence demonstrating a basis for his complaints of migraine headaches occurring 3 times each week that can last up to 3 days at a time. The claimant's fibromyalgia is accounted for by limiting the claimant to the exertional requirements of sedentary work, limiting exposure to machinery and precluding driving during the course of employment. The record demonstrates that the claimant may have this impairment, but Dr. Geisel testified that the record contained no specific trigger point examination. While a purported trigger point examination was made by Dr. Frecka after the hearing, that examination is not specific and merely states that a trigger point examination was performed that was positive.

(Tr. 22-23, citing Tr. 525). In view of Dr. Geisel's ability to review all the medical evidence in the record and to observe plaintiff's testimony at the hearing, and in light of the inconsistencies

12

presented by Dr. Frecka's RFC opinions, it was reasonable for the ALJ to rely on the testimony

of the medical expert in conjunction with Dr. Schmerler's RFC assessment in assessing

plaintiff's RFC. The ALJ's decision to rely on the opinions of Drs. Schmerler and Geisel in

determining plaintiff's RFC is substantially supported by the record.

Finally, plaintiff argues the ALJ should have contacted Dr. Frecka for clarification on the

inconsistencies in his RFC reports pursuant to Social Security Ruling 95-6p. (Doc. 6 at 9). SSR

95-6p states, in relevant part: "Because treating source evidence (including opinion evidence) is

important, if the evidence does not support a treating source's opinion on any issue reserved to

the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case

record, the adjudicator must make 'every reasonable effort' to recontact the source for

clarification of the reasons for the opinion."

This Social Security Ruling must be read in conjunction with the Social Security

regulations which address the need to recontact treating physicians. *See* 20 C.F.R. §§

404.1512(e) and 404.1527(c)(3). Sections 404.1512(e) and 404.1527(c)(3) require the ALJ to

recontact a treating physician only when the record is inadequate to make a determination of

disability. *See Gallegos v. Barnhart*, 80 Fed. Appx. 10, 12 (9th Cir. 2003) ("[T]he ALJ did not

have an obligation to seek clarification from Dr. Ho regarding possible inconsistencies in his

report because there was sufficient evidence in the record to make a determination regarding

disability."); *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001) ("It is the inadequacy of

the record, rather than the rejection of the treating physician's opinion, that triggers the duty to

recontact that physician. We believe there was an adequate record by which the ALJ could decide

this difficult case. He had before him not only Dr. Fanning's records but also the records of Ms.

13

White's prior physician, as well as those of the consulting physicians.") (citation omitted);
*Alejandro v. Barnhart*, 291 F. Supp.2d 497, 512 (S.D. Tex. 2003) ("SSR 96-5p does not say that
ALJs must recontact a treating physician whenever the record as a whole (or a treating
physician's particular contribution to the record) fails to support his opinions. To the contrary,
SSR 96-5p requires recontact solely when both (a) the record fails to support a treating source's
opinion, and (b) the basis of the treating source's opinion is unascertainable from the record. The
ALJ does not express confusion regarding the basis of Dr. Igoa's opinion; instead, she concludes
that the purported basis for his opinion does not lend any support to said opinion. This
distinction is dispositive."); *May v. Barnhart*, 2002 WL 1005103, *6 (D.N.H. 2002) (where
treating physicians' opinions were based almost entirely upon claimant's own statements about
her symptoms, there was no need for ALJ to recontact those sources in effort to uncover basis for
their opinions because record required no clarification).

Here, Dr. Frecka's RFC opinions were based primarily on plaintiff's subjective
complaints concerning his limitations. (Tr. 494, 528). In addition, the record contains evidence
from several treating and examining physicians. (See Doc. 6 at 2-5; Doc. 9 at 6-11). As
explained above, the ALJ's findings regarding plaintiff's RFC are supported by substantial
evidence. The Court concludes that the record was adequately developed to permit a reasoned
decision regarding disability. Thus, the ALJ did not err in failing to contact Dr. Frecka for
clarification of his inconsistent opinions on plaintiff's ability to work.

In view of the above, the ALJ's decision declining to give controlling or even great
weight to Dr. Frecka's more extreme RFC opinions is substantially supported by the record and
should be affirmed.

14

## II. Consideration of migraines, fluorescent lighting, and depression

Plaintiff's second and third assignments of error assert the ALJ erred by not considering the effects of plaintiff's migraines, adverse reaction to fluorescent lighting, and depression on his ability to work. Plaintiff contends the ALJ failed to include plaintiff's "severe, chronic depression," including "suicidal tendencies" in his hypothetical question to the vocational expert. Plaintiff states that if the ALJ had "included the depression, which according to Dr. Musgrove, includes suicidal tendencies, a finding of disability is warranted." (Doc. 6 at 11). Plaintiff also argues the ALJ erred by not addressing the effect of migraines and fluorescent lighting in his hypothetical question.

Contrary to plaintiff's argument, the ALJ did not fail to consider plaintiff's depression and migraine headaches in assessing plaintiff's claim for disability benefits. The ALJ found that plaintiff's headaches and depression constituted severe impairments (Tr. 20, 28) and included limitations from these impairments in assessing plaintiff's RFC. (Tr. 22-23). Based on plaintiff's physical impairments, including his headaches, the ALJ reasonably limited plaintiff to sedentary work activity with no more than occasional climbing. (Tr. 23).[1]

The ALJ also stated, "The claimant is further limited to simple, low stress tasks based on the side effects of his medication and depression." (Tr. 23). The ALJ determined that no further limitations were required based on the evidence provided by Dr. Musgrove, a clinical psychologist:

[1]To the extent plaintiff argues the ALJ improperly discounted plaintiff's diagnoses of chronic fatigue syndrome and fibromyalgia (Doc. 6 at 11), the record shows the ALJ relied on the RFC assessment of Dr. Schmerler, one of the physicians who recognized these diagnoses. By including the limitations set forth by Dr. Schmerler in the hypothetical to the VE, the ALJ necessarily considered these diagnoses in his assessment of plaintiff's disability claim.

15

> The record demonstrates that the claimant currently receives counseling from a Dr. Musgrove. Unfortunately, his report and treatment notes do not contain anything other than the claimant's subjective complaints. Dr. Musgrove diagnosed the claimant with depression, but noted that it was severe without elaboration. Further, as noted above, his treatment notes simply parrot back the claimant's complaints.

(Tr. 23).

Although plaintiff asserts the ALJ failed to consider plaintiff's "suicidal tendencies" in the hypothetical question, Dr. Musgrove's report shows that plaintiff made no suicide attempts since 2002, and that Dr. Musgrove had contracted with plaintiff not to attempt suicide now. (Tr. 509). Additionally, Dr. Musgrove reported that plaintiff was "friendly, alert, aware, insightful and verbal. He is also very eager to participate in therapy. As a result I would regard his prognosis as fairly good." (Tr. 509). The record shows that Dr. Musgrove met with plaintiff three times after his initial examination (Tr. 513-515), but that Dr. Musgrove did not opine that plaintiff had any particular limitations as a result of his depressive disorder.

On the other hand, as noted by the ALJ, Dr. Chiappone, Ph.D., a consultative psychologist, "performed a thorough mental status evaluation of the claimant with testing" and "noted that he retained the residual functional capacity to sustain simple, repetitive tasks." (Tr. 23). This assessment was confirmed by Dr. Branson, Ph.D., the state agency reviewing physician. (Tr. 439-40). The ALJ also noted that Dr. Rorick, a treating neurologist, noted complaints of depression which varied in severity and that plaintiff had not been prescribed anti-depressant or other psychotropic medication. (Tr. 23). Based on the record as a whole, the ALJ reasonably determined that plaintiff's limitations from depression were not disabling.

Plaintiff also argues the ALJ erred by not including limitations from the effect of

16

fluorescent lighting. While plaintiff testified that fluorescent lights bother him, the record

contains no evidence that plaintiff ever mentioned this problem to any physician. Accordingly,

the ALJ was not required to include any limitations from fluorescent lighting in his hypothetical

question to the vocational expert. *See Stanley,* 39 F.3d at 118 (ALJ not obliged to incorporate

unsubstantiated complaints into hypotheticals).

## III. Credibility

Plaintiff also challenges the ALJ's credibility finding. Plaintiff fails to explain exactly

how the ALJ failed to properly consider his complaints of pain and limitations. (Doc. 6 at 12-13).

Without identifying any particular error in this regard, plaintiff states that "[t]here is objective

medical evidence of record that indicates [he] suffered from severe, chronic, recurrent

depression, and post traumatic headaches and/or migraines as is evident in the treating

physicians' medical records." (Doc. 6 at 12). Plaintiff also cites to his own hearing testimony to

substantiate his complaints of pain. (Doc. 6 at 13).

Plaintiff is correct that there is evidence in the record substantiating his diagnoses of

depression and headaches. However, the fact that plaintiff has been diagnosed with a particular

condition does not in itself support the extent of plaintiff's alleged limitations or pain associated

with such conditions. *See Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir.), *cert. denied,* 389 U.S.

993 (1967) (fact that person suffers from a diagnosed disease or ailment not sufficient in absence

of proof of its disabling severity to warrant the award of benefits).

Plaintiff has failed to argue how he meets the Sixth Circuit *Duncan* test, set forth above at

page 7, *supra,* for evaluating subjective complaints of pain. Plaintiff has failed to point to

specific record evidence showing objective medical evidence of an underlying medical condition,

and whether such objective medical evidence confirms the severity of the alleged pain arising

from the condition, or whether the objectively established medical condition is of such a severity

that it can reasonably be expected to produce the alleged disabling pain. *Duncan*, 801 F.2d at

853. Rather, plaintiff points to his own subjective testimony as evidence confirming the extent

of his alleged limitations and pain. (Doc. 6 at 12-13). Such subjective evidence does not satisfy

the *Duncan* test and cannot alone support a finding of disability. *Duncan,* 801 F.2d at 852-53; 20

C.F.R. § 404.1529. *See also McCormick v. Secretary of Health & Human Services*, 861 F.2d

998, 1001 (6th Cir. 1988).

The ALJ's decision sets forth in detail his reasons for his credibility finding. (Tr. 24-25).

The ALJ's decision reflects that he properly considered the required factors in determining

plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c). In light of the ALJ's opportunity to observe

plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be

discarded lightly. *Kirk*, 667 F.2d at 538. *See also Walters v. Commissioner*, 127 F.3d 525, 531

(6th Cir. 1997); *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir. 1987). Accordingly, the Court

finds substantial evidence supports the ALJ's credibility finding in this matter. Thus, plaintiff's

last assignment of error is without merit.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the

docket of this Court.

Date: 7/14/08

Timothy S. Hogan
United States Magistrate Judge

18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RANDY BROOKS,
    Plaintiff

    vs                        Case No. 1:07-cv-185
                              (Barrett, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

19